**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

PENNIE LANDON

      Plaintiff,

vs.

WINSTON HOSPITALITY, INC, a North Carolina corporation,
WINSTON HOLDINGS, INC, a North Carolina corporation,
DELTA FIVE SYSTEMS, LLC, a North Carolina limited liability company

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff complains as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Pennie Landon is a resident of Eaton, Weld County, Colorado.

2. Defendant Winston Hospitality, LLC (Winston) is a North Carolina corporation.

3. Defendant Winston Holdings, Inc. (Winston Holdings) is a North Carolina corporation.

4. Defendant Delta Five Systems, LLC (Delta 5) is a North Carolina limited liability company.

5. This Court has jurisdiction under 28 U.S.C. §1331, and specifically,

    a. Over the First and Second Claims for Relief, which allege sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (Title VII).

      b.      Over the Third, Fourth and Fifth Claims for Relief, which allege discrimination and retaliation in violation of the Americans with Disabilities Act, as amended, under 42 U.S.C. §12117(a) (ADA), and

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the employment practices alleged to be unlawful were committed within the District of Colorado.

7. At all relevant times, Defendant Winston was an "employer" as defined in 42 U.S.C. §12111(5) of the Americans with Disabilities Act.

8. At all relevant times, Defendant Winston Holdings was an "employer" as defined in 42 U.S.C. §12111(5) of the Americans with Disabilities Act.

9. At all relevant times, Defendant Delta 5 was an "employer" as defined in 42 U.S.C. §12111(5) of the Americans with Disabilities Act.

10. At all relevant times, Winston was an "employer" as defined in 42 U.S.C. §2000e(b) of Title VII.

11. At all relevant times, Winston Holdings was an "employer" as defined in 42 U.S.C. §2000e(b) of Title VII.

12. At all relevant times, Delta 5 was an "employer" as defined in 42 U.S.C. §2000e(b) of Title VII.

13. Defendant Winston had more than 500 employees at all relevant times.

14. Winston is engaged in the business of developing and acquiring hotels throughout the United States.

15. Winston Holdings, upon information and belief, is a holding company that holds the ownership interest in Winston and, in turn, Delta 5.

16. Delta 5 is engaged in the business of pest remediation for hotels.

17. At all relevant times, Delta 5 was a wholly-owned subsidiary of Winston.

18. At various times, Ms. Landon reported directly to Winston employees and managers.

19. Winston provided common management for itself, Winston Holdings, and Delta 5.

20. Winston and its managers, including Robert Winston, III, its CEO, made final decisions as to employment matters relating to Ms. Landon, and particularly the decision to terminate her, all as more specifically alleged below.

21. Defendants shared high-level employees, including a human resources director, and shared personnel procedures.

22. Delta 5 employees were directed to report employment complaints to Winston's human resources director.

23. Defendants shared each others' business goals.

24. Defendants acted in each others' interests in relation to their employees, including Ms. Landon.

25. Defendants operate out of the same office suite in Raleigh, North Carolina.

26. Defendants' boards of directors share numerous members.

27. Winston administered Ms. Landon's benefit programs, including short-term disability coverage, and offered her health insurance.

28. Winston had complete control of Delta 5's labor relations, which were centralized at Winston.

29. Winston shared many employees with Winston Holdings and Delta 5.

30. Robert Winston, III, hired his son and placed him in Ms. Landon's position after Ms. Landon's supervisor made complaints on Ms. Landon's behalf about a hostile work environment.

31. Winston hired numerous Winston employees to replace Delta 5 employees who separated from employment.

32. Delta 5 was effectively an agent of Winston and Winston Holdings.

33. Delta 5 was an alter ego of Winston and Winston Holdings.

34. Delta 5 acted as an instrumentality of Winston and Winston Holdings.

35. The operations of Winston, Winston Holdings and Delta 5 were so closely intertwined that they should be deemed a single employer, operated as an integrated enterprise.

36. Winston, Winston Holdings and Delta 5 are jointly liable under all claims asserted in this Complaint.

## GENERAL ALLEGATIONS

37. Ms. Landon was hired as a Regional Director of Sales of Delta 5 on December 5, 2017.

38. Ms. Landon has over twenty years of experience in the hospitality industry working with national accounts.

39. Ms. Landon's job performance was excellent.

40. Ms. Landon never received any complaints about her performance before her termination on January 16, 2019.

41. Ms. Landon was well respected in the hospitality industry.

42. In the fourth quarter of 2018, Ms. Landon secured one of Winston's largest contracts, with Hilton Hotels, and secured another large contract with Wyndham Hotels & Resorts.

43. Procuring the Hilton Hotels account was an important reason that Defendants hired Ms. Landon.

44. Ms. Landon secured other significant sales for which she earned commissions that went unpaid by Defendants.

45. On June 20, 2018, at the Hospitality Industry Technology Exposition and Conference (HITEC) in Houston, Steven Wiehe, Chairman of the Board of Winston [affiliate] Winston Holdings, LLC, repeatedly told Ms. Landon, "My, what big buttons you have."

46. Mr. Wiehe repeated this unwelcome sexual comment through an evening conference event and at the dinner table the shared.

47. At the dinner table, Mr. Wiehe told a story about about his wife and a coworker who Mr. Wiehe said wanted to "fuck his wife," and said that he wouldn't have a problem with it.

48. In previous settings, Mr. Wiehe had commented that "tits sell," and had told Ms. Landon's supervisor, Delta 5 Vice President Melanie Brinkley Ferlito, that Ms. Landon and her female coworkers would "make great booth bunnies."

49. Ms. Ferlto had reported Mr. Wiehe's previous behavior to Patti Bell, Defendants' human resources director, in April 2018.

50. Mr. Wiehe's inappropriate behavior at HITEC made Ms. Landon extremely uncomfortable during the entire conference.

51. Ms. Landon and a female co-worker complained to Ms. Ferlito about Mr. Wiehe's behavior at HITEC.

52. Ms. Ferlito, in turn, again reported her concerns about Mr. Wiehe's behavior at HITEC, on Ms. Landon's behalf, to Ms. Bell on July 6, 2018.

53. Defendants did nothing to investigate the complaints.

54. Instead, Defendants began a pattern of retaliation against Ms. Landon.

55. Approximately one month after Ms. Ferlito reported the complaints, Robert Winston, III, caused Mr. Wiehe to replace Delta 5's former CEO, as interim CEO, resulting in Ms. Landon reporting directly to Mr. Wiehe.

56. In last September 2018, Robert Winston, III, CEO of Winston, hired his son, Robert Watts Winston (Watts Winston) into the same position held by Ms. Landon.

57. Watts Winston was younger and far less experienced that Ms. Landon.

58. Watts Winston immediately began attending meetings with representatives of Ms. Landon's accounts, including Hilton Hotels.

59. Robert Winston, III, instructed the President of Winston Hospitality, Michael Heeden, and Watts Winston to begin meeting with Ms. Landon's clients without her.

60. Ms. Landon found herself being pushed out of her client territory.

61. Watts Winston asked Ms. Landon to convey a false picture of Delta 5's product's success with Ms. Landon's clients by, among other things, using counterfeit product reviews.

62. By the end of 2018, Ms. Landon had secured three important contracts for Defendants.

63. At the same time, the office environment had become increasingly hostile and intolerable as a result of sex discrimination and retaliation.

64. On December 18, 2018, Ms. Landon saw the guest list for Winston's Hholiday?] party, which included Mr. Wiehe.

65. Ms. Landon contacted Ms. Bell to advise her that she did not feel comfortable being at the same part as Mr. Wiehe.

66. Ms. Landon and Ms. Bell met that day to discuss Ms. Landon's discomfort.

67. Even as of the end of 2018, Defendants had undertaken no investigation of Mr. Wiehe's harassing conduct.

68. In early December 2018, shortly after he was terminated as Chief Marketing Officer of Delta 5, Stephen LaBarbera told Ms. Landon, based on comments made to him by Robert Winston, III, [take care of] that she should also be prepared to be terminated.

69. On January 4, 2019, Ms. Landon emailed Ms. Bell to advise her that she was unable to work because she was suffering from severe stress as a result of the hostile work environment.

70. The email asked Ms. Bell to schedule a call to discuss the harassment and sex discrimination issues Ms. Landon wanted to report.

71. Later on January 6 2019, Defendants posted an ad on Indeed.com for Ms. Landon's job.

72. After sending the January 4 email to Ms. Bell, Ms. Landon advised Michael Heeden that she was under a great degree of stress, had been coughing up blood, was having chest pains and believed she might be having a heart attack, and unable to sleep.

73. On January 9, 2019, Defendants notified Ms. Landon that she had exhausted her sick leave and would not be paid during her absence.

74. Defendants never asked Ms. Landon about potential accommodations that would allow her to remain employed.

75. Ms. Landon returned to work on January 14, 2019.

76. On January 15, 2019, Defendants delivered to Ms. Landon a partial paycheck without an explanation that appeared to be a final check.

77. On January 16, 2019, Robert Winston, III, on behalf of Defendants, advised Ms. Landon that she was terminated.

78. Watts Winston, who was less experienced and less effective than Ms. Landon, replaced her.

79. As a result of Defendants' discriminatory and retaliatory conduct, including their termination of Ms. Landon, she has suffered damages, including lost past and future wages, salary, commissions, lost or diminished value of stock options and grants, the reduction in the value of other employment benefits as a result of her reduced salary, and other employment benefits, lost future earning capacity and lost or diminished future employment benefits, diminished reputation, and other pecuniary losses, and physical and emotional pain and suffering, humiliation, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**FIRST CLAIM FOR RELIEF**
(Discrimination in Violation of Title VII Act -Terms and Conditions; Termination)

80. The foregoing allegations are realleged and incorporated by reference.

81. Defendants, in violation of Title VII, created, maintained, perpetuated and/or tolerated a hostile work environment based on sex, adversely altering the terms and conditions of her employment, because of her sex.

82. Defendants, in violation of Title VII, terminated Ms. Landon because of her sex.

83. As a direct and proximate result of Defendants' discrimination against Ms. Landon, she has suffered damages as set forth in paragraph 79 above.

84. Defendants' employment practices complained of above were done with malice or with reckless indifference to Ms. Landon's federally protected rights.

## SECOND CLAIM FOR RELIEF
(Retaliation in Violation of Title VII)

85. The foregoing allegations are realleged and incorporated by reference.

86. Ms. Landon participated in protected activity by opposing Defendants' discrimination against her based on her sex.

87. As a result of Ms. Landon's protected opposition to discrimination, Defendants adversely altered the terms and conditions of her employment, including by creating a hostile work environment.

88. As a result of Ms. Landon's protected opposition to discrimination, Defendants terminated her.

89. As a direct and proximate result of Defendants' retaliation against Ms. Landon, she has suffered damages as set forth in paragraph 79 above.

90. Defendants' employment practices complained of above were done with malice or with reckless indifference to Ms. Landon's federally protected rights.

## THIRD CLAIM FOR RELIEF
(Discrimination in Violation of Americans with Disabilities Act – Termination)

91. The foregoing allegations are realleged and incorporated by reference.

92. At all relevant times, Ms. Landon was disabled within the meaning of 42 U.S.C. §12102(1)(A)(B), and/or (C), by virtue of her medical condition as described above

93. Because of Ms. Landon's medical condition, she was substantially limited in performing major life activities, including sleeping, breathing, thinking, concentrating, , and working.

94. Ms. Landon was qualified to perform the duties of her position with Defendants with or without a reasonable accommodation.

95. Defendants failed to protect Ms. Landon from attitudes, prejudices, and stereotypic assumptions about her disability and perceived disability that were not indicative of her actual abilities.

96. Defendants, in violation of the ADA, terminated Ms. Landon because she was disabled, had a record of a disability, or was regarded as disabled.

97. As a direct and proximate result of Defendant's discrimination against Ms. Landon, she has suffered damages as set forth in paragraph 79 above.

98. Defendants' employment practices complained of above were done with malice or with reckless indifference to Ms. Landon's federally protected rights.

## FOURTH CLAIM FOR RELIEF
(Discrimination in Violation of Americans with Disabilities Act –
Failure to Accommodate)

94. The foregoing allegations are realleged and incorporated by reference.

95. Defendants failed to reasonably accommodate Ms. Landon's disability.

96. As a direct and proximate result of Defendants' discrimination against Ms. Landon, she has suffered damages as set forth in paragraph 79 above.

97. Defendants' employment practices complained of above were done with malice or with reckless indifference to Ms. Landon's federally protected rights.

## FIFTH CLAIM FOR RELIEF
(Retaliation in Violation of Americans with Disabilities Act)

98. The foregoing allegations are realleged and incorporated by reference.

99. Ms. Landon participated in protected activity by opposing Defendants' discrimination and retaliation against her.

100. As a result of Ms. Landon's protected opposition to discrimination, Defendants adversely altered the terms and conditions of her employment, including by continuing to maintain a hostile work environment, and by terminating her.

101. As a direct and proximate result of Defendants' retaliation against Ms. Landon, she has suffered damages as set forth in paragraph 79 above.

102. Defendants' employment practices complained of above were done with malice or with reckless indifference to Ms. Landon's federally protected rights.

## DEMAND FOR JUDGMENT

Plaintiff Pennie Landon requests judgment in her favor against Defendants, jointly and severally, for

A. all damages caused by Defendants' unlawful conduct, including past and future pecuniary, non-pecuniary losses and compensatory damages,

B. a declaratory judgment that the practices complained of herein are unlawful and in violation of the ADA, Title VII,

C. reasonable attorney fees,

D. prejudgment and postjudgment interest,

E. costs, and

F. such other relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: May 29, 2020

                                                      *s/ David Lichtenstein*
David Lichtenstein
Matt Molinaro
Kritina Rosett
Law Office of David Lichtenstein, LLC
1556 Williams St., Suite 100
Denver, CO 80218
Telephone: (303) 831-4750
Facsimile:  (303) 863-0835
dave@lichtensteinlaw.com
matt@lichtensteinlaw.com
kristina@lichtensteinlaw.com
Attorneys for Plaintiff